UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTICT OF MICHIGAN
SOUTHERN DIVISION

DAVID LINDENSMITH,

                Plaintiff,        Civil Action No.: 14-13342
                                        Honorable Stephen J. Murphy, III
v.                              Magistrate Judge Elizabeth A. Stafford

ERIC WALTON, *et al.*

                Defendants.

_____/

## REPORT AND RECOMMENDATION THAT DEFENDANTS' MOTION FOR SUMMARY JUDGMENT [R. 17] BE GRANTED

### I.     INTRODUCTION

Plaintiff David Lindensmith, a prisoner of the Michigan Department of Corrections (MDOC), brings this action pursuant to 18 U.S.C. § 1983 alleging a hodgepodge of violations of his constitutional rights committed by officials at Parnell Correctional Facility.[1]  Defendants move for summary judgment.  [R. 17].  Because Lindensmith has requested unavailable relief and has asserted claims that are either impermissible or insufficiently supported by evidence, the Court **RECOMMENDS** that the defendants' motion be **GRANTED**.

---

[1] The Honorable Stephen J. Murphy, III, referred Defendant's Motion for Summary Judgment to the undersigned for a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). [R. 21].

## II.   BACKGROUND[2]

Lindensmith alleges that, prior to arriving at Parnell, he was battered by a transport officer and began legal research regarding a state tort action. [R. 1, PgID 4].  He claims that he presented legal mail to Area Resident Unit Supervisor (ARUS) Vera Conerly on December 12, 2013, and that she called him a troublemaker and threatened to get even with him. Lindensmith states that he immediately told Resident Unit Manager (RUM) Eric Walton about the threat.  [*Id.*, PgID 6].  He alleges that, later on December 12, ARUS Conerly told him that Corrections Officer Wyse would be conducting an excess legal property pack-up the following day, but that Officer Wyse instead began a full-blown contraband search of his cell that lasted four hours, during which time ARUS Conerly was rummaging through his property and appeared to be directing the search.  [*Id.*]. According to Lindensmith, ARUS Conerly and Officer Wyse packed up material that they claimed to be contraband and told him that he could request a hearing to determine whether any of it was allowable excess legal property.  [*Id.,* PgID 6-7].

Afterwards, Lindensmith discovered that half of the memory banks of his typewriter had been erased and that high resolution photos of two

---

[2] The electronic copy of Lindensmith's lengthy complaint is stamped "poor quality original," and portions of it are difficult or impossible to read.  [R. 1].

religious books were missing.  [*Id.*, PgID 7].  After a number of weeks,

Lindensmith discovered that the typewriter memory had completely failed

and, upon opening it, found that a sewing needle had been lodged in it in a

manner that interfered with the battery.  [*Id.,* PgID 7-8].

On January 25, 2014, Lindensmith was moving the property that was

the subject of the property hearing.  He alleges that he was on light-duty

and thus could not lift more than 20 pounds, but that Corrections Officer

David Phillips refused to get porters to help him move the property and

said, "The baby you raped weighed more than 20 pounds, so carry your

own stuff." [*Id.*, PgID 8].  Lindensmith later filed a grievance against Officer

Phillips.  [*Id.*]

During the February 2014 property hearings, Administrative Hearing

Officer Michael Maruiak found that the majority of Lindensmith's documents

were pleasure reading materials, and withheld materials that Lindensmith

claims were related to two tort suits that he planned to file, and materials

relating to Lindensmith's fight to practice his religion at Parnell.  [*Id.,* PgID

9-10].

Lindensmith states that, on February 13, 2014, the day after his

grievance against Officer Phillips had been filed, RUM Walton wrote him a

misconduct ticket for insolence after Lindensmith told Walton that his

brother-in-law had hired a private investigator to investigate whether ARUS

Conerly and Officer Wyse were having an affair.  [*Id.,* PgID 10-11].

Lindensmith was found not guilty of misconduct on February 19, 2014.  [*Id.*,

PgID 11].  He claims that he was informed the following day that RUM

Walton was moving him from his one-man cell to an eight-man cubicle.

Lindensmith alleges that he complained to RUM Walton that he would not

be able to practice Thelema if he were moved to an eight-man cube, but he

was moved on February 24, 2014.  [*Id.*].

    According to Lindensmith, in 2012 or 2013, he made requests to

Chaplain James Burrus and Facility Manager Marilyn Ruben for funds from

the Prisoner Benefit Fund (PBF) to establish a Thelemic religious library.

He states that his requests were denied based upon Burrus's and Ruben's

false statements that MDOC policy forbids the use of PBF funds for

Thelema because it was not authorized for group activity.  [*Id.*, PgID 5-6].

## III.   ANALYSIS

    Federal Rule of Civil Procedure 56 provides that "[t]he Court shall

grant summary judgment if the movant shows that there is no genuine

dispute as to any material fact and the movant is entitled to judgment as a

matter of law."  Fed. R. Civ. P. 56(a).  The party seeking summary

judgment bears the initial burden of informing the Court of the basis for its

motion, and must identify particular portions of the record that demonstrate

the absence of a genuine dispute as to any material fact. *Celotex Corp. v.*

*Catrett*, 477 U.S. 317, 323 (1986). In deciding a summary judgment motion,

the Court must view the factual evidence and draw all reasonable

inferences in the light most favorable to the non-moving party. *Matsushita*

*Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88(1986).

Of further import, the Court has an obligation under 28 U.S.C. §§

1915(e)(2)(B) and  1915A to dismiss prisoner complaints *sua sponte* when

they fail to state a claim, are frivolous, or seek monetary relief from immune

defendants. *In re Prison Litig. Reform Act*, 105 F.3d 1131, 1134 (6th Cir.

1997).

### A. Recommended Dismissal for Failure to State a Claim or Because off Unavailable Claims for Relief

Most of Lindensmith's claims should be dismissed either because

they fail to state a claim or because the relief he requests is unavailable as

a matter of law.

> *1. Demand to require termination of employees, bar future property hearings, and require permanent housing in a one-man cell.*

Lindensmith seeks, as injunctive relief, that the MDOC cease

employing RUM Walton, Officer Phillips, Chaplain Burrus, Hearing Officer

Marutisk, ARUS Conerly and Facilities Manager Ruben.  [R. 1, PgID 17-

20].  Additionally, he requests that the MDOC be enjoined from holding any

property hearings concerning him in the future.  [*Id.*, PgID 19].  These types

of relief are not available under 42 U.S.C. § 1983. "Because the realities of

running a penal institution are complex and difficult, we have also

recognized the wide-ranging deference to be accorded the decisions of

prison administrators."  *Jones v. N. Carolina Prisoners' Labor Union, Inc.,*

433 U.S. 119, 126 (1977).  For that reason, this Court should not

micromanage MDOC by ordering the termination of employees.  *Theriot v.*

*Woods*, No. 2:09-CV-199, 2010 WL 623684, at *4 (W.D. Mich. Feb. 18,

2010) (demand to terminate MDOC employees dismissed as frivolous).

The same reasoning applies to Lindensmith's demand that MDOC be

forbidden from conducting any property hearings concerning him in the

future.  *See Washington v. Hutchinson*, No. 08-12787, 2009 WL 5217655,

at *4 (E.D. Mich. Dec. 30, 2009) (refusing to order specific medical

treatment because the "Court is ill-equipped to unilaterally micro-manage

prison administration . . . .").

    In the same vein, ordering MDOC to permanently house Lindensmith

in a one-man cell for the duration of his incarceration, as he requests for

Counts I and II, would constitute impermissible micromanagement.  [R. 1,

PgID 17-18].  Lindensmith has not asked the Court to determine whether

6

the First Amendment or the Religious Land Use and Institutionalized

Persons Act[3] (RLUIPA) requires that MDOC accommodate his religion by

housing him in a one-man cell; if he had, this claim for relief would be on

the table for consideration.  Instead, Lindensmith alleges in Count I that

RUM Walton wrote a misconduct ticket against him in retaliation for

Lindensmith's grievance against Officer Phillips, and in Count II that RUM

Walton continued his retaliation by transferring him from a one-man cell to

an eight-man cube, even though Walton knew that that would prevent

Lindensmith from  practicing his religion.  [*Id.*, PgID 14-15].  Even if

Lindensmith were able to prove these retaliations claims (despite this

Court's recommendation that summary judgment of them be granted),

those claims provide no basis to preclude MDOC from exercising its ample

discretion to transfer him to an eight-man cell in the future.

*2.  declaratory relief regarding alleged prior conduct*

For Count III, Lindensmith requests declaratory relief to determine

whether RUM Walton, Officer Phillips and Chaplain Burrus violated 18

U.S.C. § 241 (conspiracy of rights) when RUM Walton transferred him to an

eight-person cube, thereby preventing him from practicing Thelema.  [R. 1,

PgID 18-19].  However, a declaratory judgment that a state official's *prior*

---

[3]  42 U.S.C. §§ 2000cc to 2000cc–5

conducted violated federal law is barred by sovereign immunity. *Banas v. Dempsey*, 742 F.2d 277, 287 (6th Cir. 1984); *Thompson v. Stapleton*, 403 F. App'x 986 (6th Cir. 2010).

### 3. injunctive relief against Hearing Officer Marutiak

In Counts IV and VII, Lindensmith claims that Hearing Officer Marutiak violated his rights during a legal property hearing by confiscating his religious materials in violation of RLUIPA, and by withholding documents he needed for his planned State tort actions. [R. 1, PgID 15-17]. In addition to demanding that MDOC be prevented from conducting future property hearings involving him (addressed above), he seeks an injunction requiring that all of his property be returned to him. [*Id.*, PgID 19-20]. However, absolute judicial immunity bars suits against prison hearing officers for actions that are within their jurisdiction, and such immunity applies to claims for injunctive relief. *Shelly v. Johnson*, 849 F.2d 228, 230 (6th Cir. 1988); *Coleman v. Governor of Michigan*, 413 F. App'x 866, 873 (6th Cir. 2011); *Cannon v. Bernstein*, No. 09-14058, 2010 WL 3842360, at *1 (E.D. Mich. July 14, 2010) *report and recommendation adopted*, 2010 WL 3842364 (E.D. Mich. Sept. 27, 2010).

Lindensmith relies upon Eleventh Amendment jurisprudence to argue that Hearing Officer Marutiak is not shielded by absolute immunity for suits

against him in his official capacity.  [R. 20, PgID 422-23].  This argument is off the mark because judicial immunity does not derive the Eleventh Immunity.  Rather, judicial immunity was established, and is broadly construed, due to the long-recognized importance of allowing judicial officers to act without fear of personal consequences to themselves. *Stump v. Sparkman*, 435 U.S. 349, 356 (1978).  "A judge will not be deprived of immunity because the action he took was in error, was done maliciously, or was in excess of his authority; rather, he will be subject to liability only when he has acted in the clear absence of all jurisdiction."  *Id.* at 356-57 (internal quotation marks and citation omitted).  For these reasons, Lindensmith's claims against Hearing Officer Marutiak are barred by absolute judicial immunity.

> ### 4. access to the courts

In Count V, Lindensmith complains that ARUS Conerly got even with him for being a "troublemaker" by putting a sewing needle in his typewriter, causing the memory to fail.[4]  As a result, he was unable to file State tort complaints on which he had been working, and thus illegally denied access

---

[4] Notably, Lindensmith's grievance regarding this matter indicates that he did not know who was responsible for erasing the memory in his typewriter. There were a number of officers in his cell during the "shakedown," and he only knew that his typewriter was working properly before then. [R. 17-12, PgID 372].

to the courts. [R. 1, PgID 16-17].  This allegation fails to state a claim because "a prisoner's right to access the courts extends to direct appeals, habeas corpus applications, and civil rights claims only." *Thaddeus-X v. Blatter*, 175 F.3d at 391 (citing *Lewis v. Casey*, 518 U.S. 343, 355 (1996)).

Lindensmith cites *John L. v. Adams*, 969 F.2d 228, 235 (6th Cir. 1992), which stated that, "in all other types of civil actions, states may not erect barriers that impede the right of access of incarcerated persons." However, the *John L.* opinion preceded the Supreme Court's pronouncement in *Lewis* that prisons must only provide inmates with the tools "to attack their sentences, directly or collaterally, and in order to challenge the conditions of their confinement.  Impairment of any *other* litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration."  *Lewis*, 518 U.S. at 355 (emphasis in original).

### 5.  equal funding for Thelemic books

Finally, Lindensmith's Count VI request that the Court enjoin the MDOC to provide the same amount in its budget for Thelema as it does for other religious groups [R. 1, PgID 17] is without merit as a matter of law, as prisoners are not "public forums" that are required to give every group equal treatment.  *Jones v. N. Carolina Prisoners' Labor Union, Inc.*, 433

U.S. 119, 133-35 (1977). A prison is entitled to consider the number of inmates who practice a particular religion. "We do not suggest, of course, that every religious sect or group within a prison—however few in number—must have identical facilities or personnel."[5] *Cruz v. Beto*, 405 U.S. 319, 322 n. 2 (1972). Given this precedent, the Sixth Circuit rejected a claim that adherents of Native American religions should be allowed to meet as often as other religious groups. *Allard v. Abramajtys*, 54 F.3d 776, *2 (6th Cir. 1995) (unpublished). "Simply alleging that a religious group is allowed to meet less often that others is insufficient to state a constitutional violation." *Id.*

See also *Abdulhaseeb v. Calbone*, 600 F.3d 1301, 1320-21 (10th Cir. 2010) (summary judgment granted on claim that prison was required under the Religious Land Use and Institutionalized Persons Act[6] (RLUIPA) to purchase Islamic books, because Act does not require prison to affirmatively subsidize religion).

Thus, Lindensmith's demand that Thelema receive the same amount of resources as other religious groups has no basis in the Constitution or federal law.

---

[5]At the time that Lindensmith was requesting funds to purchase Thelemic books for the religious library, he was apparently the only prisoner at his facility who practiced that religious. [R. 17-13, PgID 382].
[6] 42 U.S.C. §§ 2000cc to 2000cc–5

For all of these reasons, Counts III though VII should be dismissed

for failure to state a claim.  Summary judgment of Counts I and II should be

granted for the reasons stated below.

### B.  Recommendation for Summary Judgment of First Amendment Retaliation Claims

In Counts I and II, Lindensmith alleges that RUM Walton retaliated

against him for filing a grievance against Officer Phillips by issuing

Lindensmith a Class II misconduct ticket and, when that proved

unsuccessful, by transferring him to a different housing unit where he could

no longer practice his religion.  [R. 1, PgID 14-15].  To establish a First

Amendment retaliation claim, the plaintiff must establish three elements:

> (1) the plaintiff engaged in protected conduct; (2) an adverse
> action was taken against the plaintiff that would deter a person
> of ordinary firmness from continuing to engage in that conduct;
> and (3) there is a causal connection between elements one and
> two—that is, the adverse action was motivated at least in part
> by the plaintiff's protected conduct.

*Thaddeus-X v. Blatter,* 175 F.3d 378, 394 (6th Cir. 1999) (*en banc*).

It is well settled that filing grievances against prison officials is

protected by the First Amendment. *Hill v. Lappin*, 630 F.3d 468, 472 (6th

Cir.2010).  With regard to the second element, defendants argue that a

Class II misconduct ticket would not deter a person of ordinary firmness

from continuing to engage in the protected conduct because the worst

sanction for such a violation is confinement to quarters (not to exceed 5 days), loss of privileges (not to exceed 30 days), extra duty (not to exceed 40 hours) and/or restitution. [R. 17-5, PgID 333]. They cite *Ingram v. Jewell*, 94 F. App'x 271, 273 (6th Cir. 2004), which held that fourteen days of lost privileges did not constitute an adverse actions.

However, Lindensmith responds that Class II misconduct tickets are sent to a prisoner's central file and may result in loss of special disciplinary credits, which could ultimately extend a prisoner's sentence. [R. 20, 412-14]. Some portions of the materials Lindensmith cites are missing, but the record does demonstrate that a disciplinary credit committee recommends to the warden whether a prisoner should receive special disciplinary credits, so it is feasible that being found guilty for Class II misconduct could affect a prisoner's release date. [R. 20-1, PgID 456, ¶ S.]. Additionally, Lindensmith alleges that his transfer to an eight-man cell was an adverse action, and provides evidence that he had previously notified RUM Walton and others that he needed a one-man cell in order to practice his religion. [*Id.*, PgID 468].

The critical weakness in Lindensmith's retaliation claim relates to third element, which requires evidence that RUM Walton was motivated to retaliate against him because of his grievance against Officer Phillips. The

13

Sixth Circuit imposes a "high burden," demanding some evidence of retaliatory motive and requiring that summary judgment be granted when the plaintiff relies only on conclusory allegations. *Hill v. Lappin*, 630 F.3d 468, 475-76 (6th Cir. 2010). This high burden is necessary because "[r]etaliation claims by prisoners are prone to abuse since prisoners can claim retaliation for every decision they dislike." *Graham v. Henderson*, 89 F.3d 75, 79 (2d Cir. 1996) (citation and internal quotation marks omitted).

In their motion for summary judgment, defendants argue that Lindensmith has failed to show that RUM Walton took those actions against him in retaliation for the grievance against Officer Phillips as opposed to the 47 other grievances that Lindensmith has filed. [*See* grievance summary at R. 17-2, PgID 312-14]. Lindensmith flippantly responds, "As to the motive? The plaintiff does not know why RUM Walton retaliated against him. He should be asked that question at trial before a jury." [R. 20, PgID 413]. He then argues that the temporal proximity between the grievance and the misconduct ticket is sufficient. [*Id.*, 413-14]. Lindensmith is incorrect in believing that temporal proximity alone is enough. The *Hill* court noted, "Although this court has concluded that evidence of temporal proximity between filing grievances and the adverse action provides some support for establishing retaliatory motive, it has been reluctant to find that such

14

evidence alone establishes retaliatory motive." *Hill*, 630 F.3d at 476.

Thus, Lindensmith cannot simply rely upon the temporal proximity between his grievance and RUM Walton's issuance of a Class II misconduct ticket.  He cannot bring his claim to trial to uncover RUM Walton's motive unless he meets the high burden of presenting evidence that the particular grievance against Officer Phillips motivated RUM Walton to issue the ticket.  RUM Walton alleges that he wrote the misconduct ticket alleging insolence because he found Lindensmith's statement regarding the investigation into the alleged affair between ARUS Conerly and Officer Wyse to have been meant to cause alarm and harass, and Lindensmith acknowledges in his complaint that he made the statement to RUM Walton. [R. 17-7, PgID 340; R. 1, PgID 10-11].  Given the high burden Lindensmith faces, his conclusory allegation that the misconduct ticket was motivated by the grievance against Officer Phillips, rather than by Lindensmith's statement, is insufficient.

Consequently, summary judgment should be granted in favor of

defendants on Counts I and II.[7]

## IV. CONCLUSION

For the foregoing reasons, it is recommended that the defendants'

motion for summary judgment be **GRANTED**.


                                                    s/Elizabeth A. Stafford
                                                    ELIZABETH A. STAFFORD
                                                    United States Magistrate Judge

Dated: January 25, 2016


### NOTICE TO THE PARTIES REGARDING OBJECTIONS

Either party to this action may object to and seek review of this

Report and Recommendation, but must act within fourteen days of service

of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and Fed. R. Civ.

P. 72(b)(2). Failure to file specific objections constitutes a waiver of any

further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v.*

*Secretary of HHS*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*,

638 F.2d 947 (6th Cir. 1981). Filing objections which raise some issues but

---

[7] Given these recommendations, the Court will not address defendants'
claim that Lindensmith failed to exhaust his administrative remedies.
Nonetheless, the Court does opine that there are questions of fact
regarding whether Lindensmith gave defendants fair notice of his charges
and of whether defendants thwarted his ability to exhaust in some cases.
Of further note, defendants' qualified immunity argument relies entirely on
their previously addressed claims that they did not violate the Constitution
or federal law, so separate analysis is not necessary.

fail to raise others with specificity will not preserve all objections that party might have to this Report and Recommendation. *Willis v. Secretary of HHS*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). A copy of any objection must be served upon this Magistrate Judge. E.D. Mich. LR 72.1(d)(2).

Each **objection must be labeled** as "Objection #1," "Objection #2," etc., and **must specify** precisely the provision of this Report and Recommendation to which it pertains. Not later than fourteen days after service of objections, **the non-objecting party must file a response** to the objections, specifically addressing each issue raised in the objections in the same order and labeled as "Response to Objection #1," "Response to Objection #2," etc. The response must be **concise and proportionate in length and complexity to the objections**, but there is otherwise no page limitation.

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on January 25, 2016.

s/Marlena Williams
MARLENA WILLIAMS
Case Manager
